UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TUNDRA, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>FAIRE WHOLESALE, INC.,<br><br>        Defendant. | Case No. 23-cv-02513-AMO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 96 |

Defendant Faire Wholesale, Inc.'s Motion to Dismiss the First Amended Complaint ("FAC") was heard before this Court on November 13, 2024. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** Defendant's Motion for the following reasons.

**I.     BACKGROUND**

Defendant Faire Wholesale, Inc. ("Faire"; formerly known as "Indigo Fair") hosts an online wholesale marketplace that connects Retailers with Brands. FAC (ECF 73) ¶ 25. Plaintiff Tundra, Inc., is another online wholesale marketplace and a competitor to Faire. FAC ¶ 25. Tundra purports that it developed an innovative business model that provides essentially the same service as Faire but without charging commissions, instead relying primarily upon paid platform-based advertising to generate revenue. FAC ¶ 25.

Tundra alleges that Faire monopolizes, attempts to monopolize, and restrains trade in the supposed relevant market. Primarily, Tundra alleges that a clause in Faire's Terms of Service with Brands creates an exclusive dealing arrangement. FAC ¶¶ 28, 49. The Terms of Service with Brands provides in relevant part that "once a Brand completes any order with a Retailer on Faire's

marketplace, the Brand is contractually prohibited from doing business with the Retailer 'in any manner' other than on Faire." FAC ¶ 49.  Tundra characterizes this provision as a perpetual ratchet that locks Brands and Retailers exclusively into Faire's platform "for all time."  FAC ¶ 50.

In addition to this principal exclusive dealing claim, Tundra alleges a range of anticompetitive or tortious behaviors.  Tundra alleges that Faire requires Brands to list their entire catalogs on Faire (FAC ¶ 54); that it uses commission waivers and withholding of payments to enforce the exclusivity provision (FAC ¶¶ 55-56); that it "targets Tundra Brands" (FAC ¶¶ 61-62); and that it "attack[ed]" Tundra's new Wholesale Co-op Platform in a variety of ways (FAC ¶¶ 63-65).

Tundra initiated this lawsuit by complaint filed on May 23, 2023.  ECF 1.  In its February 13, 2024 Order, the Court dismissed Tundra's Complaint under Rule 12(b)(6) for failing to adequately allege a proper relevant market in support of Tundra's several antitrust claims.  ECF 71.  The FAC alleges the same causes of action as alleged in the original Complaint:

1. Monopolization under Title 15 U.S.C. § 2,
2. Attempted monopolization under Title 15 U.S.C. § 2,
3. Unreasonable restraint of trade under Title 15 U.S.C. § 1,
4. Unfair Competition under California Business & Professions Code § 17200, and
5. Tortious interference with contractual relations.

*See* ECF 73.

**II.   DISCUSSION**

Faire moves to dismiss the FAC on three bases: (1) failure to allege a relevant product market, (2) failure to allege facts showing an anticompetitive restraint, and (3) failure of the tortious interference claim as derivative.  After setting forth the legal standard for a motion to dismiss, the Court focuses its analysis on the sufficiency of Tundra's allegations regarding anticompetitive conduct.[1]

---

[1] The Court assumes, without deciding for purposes of this Order, that Tundra's amended pleading plausibly alleges the existence of an operative antitrust market.

2

**A.     Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. *See Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court may consider matters that are properly the subject of judicial notice, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider documents referenced extensively in the complaint and documents that form the basis of the plaintiffs' claims. *See No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003). If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

### B. Anticompetitive Conduct

Tundra asserts antitrust claims for monopolization and attempted monopolization in violation of Section 2 of the Sherman Act (Counts 1 and 2), an unreasonable restraint of trade in violation of Section 1 of the Sherman Act (Count 3), and a violation of California's Unfair Competition Law (Count 4, "UCL"). As acknowledged at the hearing, all these claims require a showing of anticompetitive conduct. Tundra avers that it sufficiently alleges anticompetitive conduct in the form of exclusive dealing.

"Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits [e]very contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States." *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010). From this language, the Supreme Court "has long recognized that Congress intended to outlaw only unreasonable restraints." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). "To establish liability under § 1, a plaintiff must prove (1) the existence of an agreement, and (2) that the agreement was an unreasonable restraint of trade." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016). An agreement is an unreasonable restraint of trade if defendant "plays enough of a role in [the relevant] market to impair competition significantly" and the challenged agreement "is the type that restrains trade." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1413 (9th Cir. 1991).

"Exclusive dealing," the restraint of trade alleged here, "involves an agreement between a vendor and a buyer that prevents the buyer from purchasing a given good from any other vendor." *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 1003 (9th Cir. 2020) (quoting *Allied Orthopedic*, 592 F.3d at 996). Courts have long held that exclusive dealing arrangements are not per se illegal because "[t]here are 'well-recognized economic benefits to exclusive dealing arrangements, including the enhancement of interbrand competition.' " *Allied Orthopedic*, 592 F.3d at 996 (quoting *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997)). An exclusive dealing arrangement only violates the Sherman Act under the rule of reason if "its effect is to 'foreclose competition in a substantial share of the line of commerce affected.' " *Id.* at 996 (quoting *Omega Envtl.*, 127 F.3d at 1162). Moreover, courts have found that exclusive

dealing agreements do not result in substantial foreclosure of the relevant market where they can be terminated easily and on short notice. *Allied Orthopedic*, 592 F.3d at 997 ("The 'easy terminability' of an exclusive dealing arrangement 'negate[s] substantially [its] potential to foreclose competition.' ") (citation omitted); *Western Parcel*, 190 F.3d at 976 (finding that exclusive contracts did not hinder competition because, among other things, "the challenged contracts had termination provisions that allowed a customer to terminate the contract for any reason with very little notice"); *Omega Envtl.*, 127 F.3d at 1163-64 ("the short duration and easy terminability of these agreements negate substantially their potential to foreclose competition"); *PNY Tech., Inc. v. SanDisk Corp.*, 2014 WL 2987322, at *4 (N.D. Cal. 2014) (dismissing exclusive dealing claims where the "short duration and easy terminability" of the exclusivity commitment "negate substantially their potential to foreclose competition").

Tundra alleges that Faire engages in anticompetitive conduct by enforcing a "No Circumvention" policy in its Terms, characterizing the policy as "an exclusive dealing requirement of indefinite duration" (FAC ¶ 28) that operates "for all time" and "forever" (FAC ¶ 50). Tundra describes the "No Circumvention" policy as follows: "once a Brand completes any order with a Retailer on Faire's marketplace, the Brand is contractually prohibited from doing business with the Retailer 'in any manner' other than on Faire – meaning that the Brand cannot transact with the same Retailer on any other competing online wholesale marketplace, and likewise cannot do business with the Retailer offline." FAC ¶ 49.[2] Tundra asserts this exclusivity

---

[2] The "No Circumvention" clause reads,

> No Circumvention. Once an order has been placed through your Shop Page by a Retailer, you agree that you will fulfill all orders placed by such Retailer through the Services. You further agree to not influence Retailers to transact offline outside of the Services in any manner, or otherwise circumvent Faire's process in order to transact orders with Retailers who were introduced to you through the Services offline or outside of the Services in any manner. Faire reserves the right to deactivate or terminate your account if you fail to abide by these terms.

Faire Brand Terms of Service, Clause 11(e) (ECF 97-1 at 8).

5

1    prohibition operates to prohibit Brands and Retailers "from ever doing business together 'in any
2    manner' offline." FAC ¶ 50.
3        Faire argues that, as long as a contract provides that it "can be terminated easily and on
4    short notice, the contract does not result in substantial foreclosure of the relevant market." Mot. at
5    12 (citing *Allied Orthopedic*, 592 F.3d at 997). Because the Terms of Service at issue can be
6    terminated easily and on short notice, Faire reasons, these agreements cannot support any of
7    Tundra's claims for anticompetitive conduct based on exclusive dealing. *Id.* Tundra argues in
8    response that Faire establishes de facto exclusive dealing arrangements with Brands and Retailers
9    through the "No Circumvention" policy enshrined in its Terms and that "de facto exclusive
10   dealing claims are cognizable under the antitrust laws." Opp. at 15 (quoting *ZF Meritor, LLC v.*
11   *Eaton Corp.*, 696 F.3d 254, 270 (3d Cir. 2012)).
12       The Ninth Circuit, however, has not "explicitly recognized a 'de facto' exclusive dealing
13   theory like that recognized in the Third Circuit and Eleventh Circuit." *See Aerotec Int'l, Inc. v.*
14   *Honeywell Int'l, Inc.*, 836 F.3d 1171, 1182 (9th Cir. 2016); *ZF Meritor*, 696 F.3d at 282 n.14;
15   *McWane, Inc. v. Federal Trade Commission*, 783 F.3d 814, 833-35 (11th Cir. 2015). Instead, the
16   Ninth Circuit recognizes that "[i]n certain limited situations, discounts and rebates conditioned on
17   a promise of exclusivity or on purchase of a specified quantity or market share of the seller's
18   goods or services may be understood as 'de facto' exclusive dealing contracts because they coerce
19   buyers into purchasing a substantial amount of their needs from the seller." *Aerotec*, 836 F.3d at
20   1182 (citing XI Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶¶ 1807b1-2 (3d ed.
21   2011)).
22       Here, Tundra fails to plausibly allege an anticompetitive exclusive dealing arrangement.
23   On this record, including the No Circumvention and Termination contractual provisions
24   incorporated by reference, Faire's Terms are easily terminable by either side at any time. For
25   example, Clause 18 of Faire's Brand Terms of Service, the "Termination" provision, permits
26   Brands to terminate their accounts at any time, for any reason, and with immediate effect. Brand
27   Terms of Service, Clause 18 (ECF 97-1 at 11) ("You may terminate your relationship with Faire at
28   any time by contacting us or as otherwise indicated in your Brand Account portal. Faire will take

1   down your Shop Page as soon as practicable and will close your Brand Account once there has
2   been an accounting of all monies due and owing."). Tundra does not provide any authority
3   suggesting that this exclusivity towards both sides of the marketplace is somehow different from
4   the long line of cases finding that exclusive dealing agreements do not result in substantial
5   foreclosure of the relevant market where they can be terminated easily and on short notice. *See*
6   *Allied Orthopedic*, 592 F.3d at 996 ("The 'easy terminability' of an exclusive dealing arrangement
7   'negate[s] substantially [its] potential to foreclose competition.' " (quoting *Omega*, 127 F.3d at
8   1163-64)).

9         Tundra asks the Court to permit a theory of de facto exclusive dealing to proceed based on
10  the limited options for Brands and Retailers to connect with each other after the two entities have
11  both departed the platform. Tundra avers that the two-way No Circumvention precludes former
12  Faire Brands from contracting with former Faire Retailers so long as either one remains on the
13  platform, and this creates a de facto exclusivity arrangement in which Brands and Retailers are
14  forever obligated to transact exclusively through Faire once they make a connection through Faire.
15  However, such perpetuity is plainly contradicted by the Termination provision in the Terms of
16  Service that underlie Tundra's Complaint. *See* Brand Terms of Service, Clause 18. Further, these
17  allegations do not reflect any of the hallmarks of de facto exclusive dealing, even if that theory
18  were more clearly cognizable in this Circuit. The FAC does not present any allegations that would
19  support a claim of exclusivity, e.g., "requirements terms, . . . volume or market share targets, or
20  long-term contracts that prevent meaningful competition by taking potential purchasers off the
21  market." *Aerorec Int'l*, 836 F.3d at 1181 (citations omitted). Nor does the FAC present any
22  allegations regarding the other conditions, such as discounts or rebates, that would permit finding
23  a de facto exclusive dealing arrangement. *Id.* at 1182 ("In certain limited situations, discounts and
24  rebates conditioned on a promise of exclusivity or on purchase of a specified quantity or market
25  share of the seller's goods or services may be understood as 'de facto' exclusive dealing contracts
26  because they coerce buyers into purchasing a substantial amount of their needs from the seller.").
27  The Terms at issue here simply do not include any such coercive provisions. Tundra accordingly
28  fails to establish the existence of a de facto anticompetitive exclusive dealing arrangement. In the

absence of the coercive circumstances necessary to support such a theory in the Ninth Circuit, Tundra's claim of de facto exclusive dealing fails as a matter of law. *Aerotec*, 836 F.3d at 1182.

In an effort to supplement this deficient theory, Tundra contends that "Faire supplements its exclusive dealing contracts through other anticompetitive behavior and policies" such as "aggressive threats, penalties, and enforcement actions," Faire's Entire Catalog policy, and "illegal, abusive threats of litigation toward brands and retailers who seek to do business with its competitors." Opp. at 20. However, Tundra fails to establish how the Entire Catalog policy (requiring Brands to offer their entire catalog of products for sale on the platform, not piecemeal) alters the exclusivity arrangement at all. *See Thompson Everett, Inc. v. National Cable Ad., L.P.*, 850 F. Supp. 470, 476 n.4 (1994) ("[a]n exclusive distributorship typically provides a distributor with the right to be the exclusive outlet for a manufacturer's products or services in a given geographic area") (citation omitted)). And while Tundra charges that Faire "openly and aggressively polices compliance with its policies, terms, and conditions" such that any Brand or Retailer deviating from Faire's contractual restrictions is "forever barred from using Faire's platform," (*see* FAC ¶ 31), such conduct appears to be mere contractual enforcement. Indeed, any threats of litigation by Faire cannot serve as the basis of an antitrust claim absent unusual circumstances that Tundra does not allege here. *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993) (holding that the assertion of claims in litigation is protected from antitrust challenge unless plaintiff can show that claims were objectively baseless and subjectively intended to interfere directly with a competitor). Overall, none of these assertions meet the prevailing legal standards to allege actionable anticompetitive conduct in the form of exclusive dealing. The Court accordingly finds that the antitrust claims based on the exclusive dealing agreements fall short, and the Court therefore GRANTS Faire's motion to dismiss Tundra's Sherman Act antitrust claims.[3]

---

[3] Tundra concedes that its common law claim for tortious interference cannot survive if Tundra fails to plead actionable anticompetitive conduct. Opp. at 25. Since it has not pleaded actionable anticompetitive conduct, the Court additionally dismisses this derivative state law claim.

**III.  CONCLUSION**

For the foregoing reasons, including that Tundra's theory of de facto exclusive dealing fails as a matter of law, the Court **GRANTS** Defendant Faire's Motion to Dismiss **with prejudice**. The Court hereby **DISMISSES** the action without leave to amend.  The Clerk of Court shall close the file in this matter.

**IT IS SO ORDERED.**

Dated: February 25, 2025

_____
**A**RACELI **M**ARTÍNEZ-**O**LGUÍN
**United States District Judge**